**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; and CENTER FOR MEDICARE & MEDICAID SERVICES,<br><br>Defendants. | Case № 2:15-cv-01113-ODW (FFMx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [41]** |

## I. INTRODUCTION

This is an action for declaratory and injunctive relief filed by Plaintiff California Insurance Guarantee Association ("CIGA") against Defendants Sylvia Mathews Burwell, United States Department of Health & Human Services, and Center for Medicare & Medicaid Services (collectively "United States"). CIGA seeks a judicial declaration that it is not required to reimburse the United States for Medicare benefits paid to individuals whose losses may also be covered by CIGA. The United States now moves to dismiss portions of CIGA's Second Amended Complaint. For

the reasons discussed below, the Court **GRANTS** the United States' Motion.[1] (ECF No. 41.)

## II. FACTUAL BACKGROUND

CIGA is a statutorily-created and unincorporated association of insurers admitted to transact certain classes of insurance business in California. (Second Am. Compl. ("SAC") ¶ 6.) CIGA was created by the California Legislature to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers became insolvent. (*Id.* ¶ 10.)

To that end, CIGA is currently paying several claims under various workers' compensation policies issued by now-insolvent insurers. (*Id.* ¶ 21.) These same claimants also received payments from Medicare for items and services that were otherwise covered by these policies.[2] (*Id.*) Where Medicare pays benefits for a loss that is also covered by another insurer, the Medicare Secondary Payer statute, 42 U.S.C. § 1395y, designates Medicare as the "secondary payer" and generally requires those other insurance plans (called "primary plans") to reimburse Medicare for all benefits it paid. (*Id.* ¶ 18.) Concluding that the workers' compensation policies were "primary plans" within the meaning of the statute, the United States demanded that CIGA reimburse it for the Medicare benefits paid to these claimants. (*Id.* ¶ 22.) CIGA refused, prompting the United States to commence collection proceedings. (*Id.* ¶¶ 22–25.)

On February 17, 2015, CIGA filed this action seeking a judicial declaration that it is not required to reimburse the United States for any conditional payments made by Medicare to these claimants. (ECF No. 2.) On March 18, 2015, CIGA filed a First Amended Complaint. (ECF No. 17.) The United States previously moved to dismiss

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

[2] While CIGA alleges that the policies do not cover three of the ten claims at issue in this action, this Motion is limited to the seven claims where coverage is conceded. (SAC ¶¶ 43–53.)

the First Amended Complaint, which was granted in part and denied in part by Judge Morrow with leave to amend.[3]  (ECF Nos. 24, 38.)  On November 23, 2015, CIGA filed a Second Amended Complaint.  (ECF No. 41.)  On December 10, 2015, the United States moved to dismiss portions of the Second Amended Complaint.  (ECF No. 41.)  CIGA timely opposed, and the United States timely replied.  (ECF Nos. 47, 48.)  That Motion is now before the Court for consideration.

### III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

/ / /

---

[3] The matter was transferred to this Court soon thereafter.  (ECF No. 43.)

## IV. DISCUSSION

Judge Morrow granted the United States' prior Motion to Dismiss on the grounds that CIGA was a "primary plan" within the meaning of the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2)(B)(ii), and that the statute's reimbursement requirements preempted any contrary California statutes. (Order 11–24, ECF No. 38.)[4] However, CIGA was given leave to amend to assert other grounds on which the United States may be prohibited from seeking reimbursement. (*Id.* at 26.) In its Second Amended Complaint, CIGA asserts two such grounds. First, CIGA asserts that the United States did not file timely proofs of claim under the California Guarantee Act. (SAC ¶¶ 29–35.) Second, CIGA argues that the Guarantee Act prohibits the United States from asserting claims against CIGA as either an assignee or subrogee of the insured (or insurer). (*Id.* ¶¶ 36–38.) The United States challenges both theories. The Court agrees that the first does not hold water, and thus declines to reach the second.

### A. Timely Proofs of Claim

The United States contends that claims made by the United States can never be defeated by a state-imposed time limit. (Mot. 5–8.) CIGA responds that the McCarran-Ferguson Act is an exception to this rule. That Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). CIGA argues that the California Guarantee Act is a state law that "regulat[es] the business of insurance," and thus supersedes any general federal law allowing claims to be filed outside the Guarantee Act's filing deadline. (Opp'n 6–14.) In reply, the United States argues that McCarran-Ferguson does not apply because (1) the Guarantee Act's

---

[4] Judge Morrow did rule, however, that CIGA stated a cognizable claim to the extent that the claimants' losses were not covered by the original workers' compensation insurance policies. (Order 25.)

claims filing statute does not regulate the "business of insurance," and (2) that the Medicare Secondary Payer statute is at any rate a federal statute that specifically regulates the business of insurance. (Reply 1–8.)

The Court concludes that this issue can and should be resolved on narrower grounds. Specifically, the Court holds that the McCarran-Ferguson Act does not subject the United States to California's claims filing deadline because the Act was never intended to waive the federal government's sovereign immunity.

### 1. *Summerlin* and Sovereign Immunity

The Court begins with the familiar rule that "[w]hen the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *United States v. Summerlin*, 310 U.S. 414, 417 (1940); *see also Bresson v. C.I.R.*, 213 F.3d 1173, 1176 (9th Cir. 2000). This common law rule has its origins in the concept of sovereign immunity; just as the states cannot sue the federal government without its consent, the states cannot enact laws that purport to bind the federal government without its consent. *United States v. Thompson*, 98 U.S. 486, 488–91 (1878); *Gibson v. Chouteau*, 80 U.S. 92, 99 (1871) ("As legislation of a State can only apply to persons and things over which the State has jurisdiction, the United States are also necessarily excluded from the operation of such statutes."). Later cases also describe the federal government's freedom from state regulation as a "corollary" of the Supremacy Clause. *Hancock v. Train*, 426 U.S. 167, 178 (1976); *Mayo v. United States*, 319 U.S. 441, 445 & n.5 (1943); *see Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014).

Congress can, of course, waive sovereign immunity. *See, e.g., Loeffler v. Frank*, 486 U.S. 549, 554 (1988). Similarly, the federal government can consent to state regulation. *Ruthardt v. United States*, 303 F.3d 375, 384 (1st Cir. 2002) ("The Supreme Court long ago held that (presumptively) claims of the United States as

sovereign cannot be defeated by state statutes of limitations. We say 'presumptively' because Congress can provide otherwise." (citing *Summerlin,* 310 U.S. at 417)); *Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power & Conservation Planning Council*, 786 F.2d 1359, 1364 (9th Cir. 1986). However, there must be "a clear congressional mandate and specific legislation which makes the authorization of state control [over the federal government] clear and unambiguous." *Seattle Master Builders Ass'n*, 786 F.2d at 1364; *Hancock*, 426 U.S. at 179 ("[W]here 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation." (footnotes omitted)).

Absent such a waiver, *Summerlin* clearly controls here. The California Guarantee Act requires all claims against CIGA to be presented to the liquidator of the defunct insurer "on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings." Cal. Ins. Code § 1063.1(c)(1)(C). CIGA alleges that this deadline passed several years ago with respect to the defunct insurers at issue in this lawsuit, and that the United States' claims for reimbursement are therefore barred. (SAC ¶¶ 33–35.) However, as a state law that "undertakes to invalidate the claim of the United States[] so that it cannot be enforced at all," the Guarantee Act's claims filing deadline "transgresse[s] the limits of state power" and is thus inapplicable to claims by the United States. *Summerlin*, 310 U.S. at 417.[5] The only question, then, is whether Congress waived *Summerlin* in the insurance context.

### 2. Waiver of *Summerlin*: the McCarran-Ferguson Act

CIGA argues that the McCarran-Ferguson Act authorizes the states to bind the federal government to a claims filing deadline in the insurance context. As previously noted, the McCarran-Ferguson Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the

---

[5] Contrary to CIGA's argument, *Summerlin* expressly rejected the notion that a statutory claims filing deadline was materially different from a statute of limitation such that sovereign immunity did not apply. 310 U.S. at 417.

purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). "The McCarran–Ferguson Act was enacted in response to [the Supreme] Court's decision in *United States v. South–Eastern Underwriters Assn.*, 322 U.S. 533 (1944)." *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 499 (1993). "Prior to that decision, it had been assumed that issuing a policy of insurance [wa]s not a transaction of commerce subject to federal regulation. [However,] in *South–Eastern Underwriters,* [the Supreme Court] held that an insurance company that conducted a substantial part of its business across state lines was engaged in interstate commerce and thereby was subject to the antitrust laws. [In response,] Congress moved quickly to restore the supremacy of the States in the realm of insurance regulation" by enacting McCarran-Ferguson. *Id.* at 499–500 (internal citations and quotation marks omitted); *see also Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 429 (1946); *Merchs. Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488–89 (9th Cir. 1995) ("Congress enacted the McCarran–Ferguson Act in part to allow the states to regulate the business of insurance free from inadvertent preemption by federal statutes of general applicability.").

CIGA relies on *Ruthardt v. United States*, 164 F. Supp. 2d 232 (D. Mass. 2001), *aff'd*, 303 F.3d 375 (1st Cir. 2002), for the proposition that McCarran-Ferguson was intended as a waiver of *Summerlin*. (Opp'n 9.) There, the district court held:

> [*Summerlin*'s] preemptive effect here (through the general federal priority statute, 31 U.S.C. § 3713) cannot overcome the particular niche for state authority carved out by the McCarran–Ferguson Act, which was enacted by Congress five years after *Summerlin* was decided. Thus, despite the enduring general vitality of the *Summerlin* principle, the United States will be deemed to have chosen to become subject to the state filing deadline in this case to the degree the McCarran–Ferguson Act protects such rules.

*Ruthardt*, 164 F. Supp. 2d at 242.

The Court respectfully disagrees with the district court's analysis in *Ruthardt*. First, the Act, by its express terms, does not apply to *Summerlin*. The Act refers only

to "Acts of Congress" as not preempting state statutes that regulate the insurance industry. § 1012(b). The rule laid down in *Summerlin* is not an "Act of Congress," nor is it derived from any Act of Congress; it is a common law rule that stems from principles of sovereign immunity that long predate this country's founding, and that is now enshrined in the Supremacy Clause. Nor does *Summerlin* bind the states by preempting state law "through" a federal statute; rather, it is a stand-alone principle that delineates the states' power (or lack thereof) over the federal government. No federal statute is required for it to operate.

Second, the purpose of the Act was to ensure that the regulation of the insurance business stayed with the states (unless Congress specifically provided otherwise). The *Summerlin* principle does not substantially affect the state's regulation of the insurance industry. It is not a legislative enactment that imposes requirements that all businesses and policyholders in the California insurance market must adhere to; rather, it simply governs one aspect of CIGA's claims process where the United States acts as a claimant. Third, and perhaps most importantly, protecting the insurance business from unwitting federal legislative control is a far cry from subjecting the federal government as a sovereign to state control. That Congress intended the former cannot be reasonably construed as intending the latter.

*Ruthardt* does not address any of these issues. Instead, *Ruthardt* suggests that the mere fact that *Summerlin* preceded the enactment of McCarran-Ferguson is persuasive, perhaps conclusive, evidence that the Act was intended to displace *Summerlin* in the insurance context. But this does not account for the substantial authority noting that the Act was enacted directly in response to *South–Eastern Underwriters*, not *Summerlin*. The fact that McCarran-Ferguson came five years after *Summerlin* is, in all likelihood, coincidence. Thus, the timing of McCarran-Ferguson's enactment is insufficient to show that Congress "clear[ly] and unambiguous[ly]" intended to subject the federal government to state insurance law. *Seattle Master Builders Ass'n*, 786 F.2d at 1364.

The remaining cases that CIGA points to almost all relate only to the *priority* of claims asserted by the United States, not the complete *invalidation* of such claims. *Ruthardt*, 303 F.3d at 379–84; *Antonio Garcia v. Island Program Designer, Inc.*, 4 F.3d 57, 60 (1st Cir. 1993); *Boozell v. United States*, 979 F. Supp. 670, 676 (N.D. Ill. 1997); *State ex rel. Clark v. Blue Cross Blue Shield of W. Virginia, Inc.*, 510 S.E.2d 764, 779 (W. Va. 1998). The only case to also address invalidation was the First Circuit's decision in *Ruthardt*, but that court did not meaningfully address McCarran-Ferguson's effect on *Summerlin*. *Ruthardt*, 303 F.3d at 384. Instead, the court struck down the state claims filing deadline on the alternate ground that it did not "regulat[e] the business of insurance" within the meaning of McCarran-Ferguson. *Id.* *Ruthardt* thus has no bearing on the question now before the Court.

For these reasons, the Court concludes that the Act does not subject the United States as a sovereign to the Guarantee Act's claim-filing deadline.

**B.    Subrogation**

CIGA's arguments regarding the inability of the United States to assert subrogated claims against it are moot. As the United States point out, it has a direct right of recovery against CIGA *in addition* to any claims it could assert as a subrogee. *Zinman v. Shalala*, 67 F.3d 841, 844–45 (9th Cir. 1995). And because the Guarantee Act's claims filing deadline does not prevent the United States from pursuing its direct claims, it is unnecessary to decide the validity or scope of its subrogation rights.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the United States' Motion to Dismiss. (ECF No. 41.) The Court dismisses CIGA's claims against the United States to the extent that they are based on the United States' failure to file timely proofs of claim under the Guarantee Act or based on the United States' alleged position as an assignee or subrogee of either the insured or the insurer.

**IT IS SO ORDERED.**

March 16, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**