# United States District Court
# Central District of California

| | |
|---|---|
| CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS E. PRICE, Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; and CENTER FOR MEDICARE & MEDICAID SERVICES,<br><br>Defendants. | Case № 2:15-cv-01113-ODW (FFMx)<br><br>**ORDER RE: PLAINTIFF'S ENTITLEMENT TO RELIEF** |

## I. INTRODUCTION

In January 2017, the Court granted Plaintiff California Insurance Guarantee Association's ("CIGA") motion for partial summary judgment and denied Defendants' motion to dismiss and motion for summary judgment. (Order, ECF No. 94.) Following that Order, the parties submitted briefing on the relief to which CIGA is entitled, if any. (ECF Nos. 97–99.) For the reasons discussed below, the Court concludes that CIGA is entitled to (1) an order vacating and setting aside the three reimbursement demands at issue in this lawsuit and (2) a judicial declaration that the Center for Medicare and Medicaid Services' ("CMS") interpretation of the Medicare Secondary Payer statute ("MSP") with respect to reimbursement of conditional

payments is unlawful. However, the Court declines to enjoin CMS from continuing its billing and reimbursement practices at this time.[1]

## II. BACKGROUND

The Court has recited at length in prior orders the facts underlying this dispute, and thus the Court recounts only the salient facts here. Where Medicare pays benefits for a loss that is also covered by another insurance plan, the MSP requires those other plans (called "primary plans") to reimburse Medicare. 42 U.S.C. § 1395y(b)(2)(A)(ii), (B)(ii). To determine whether a potential primary plan covers a particular line-item charge on a payment summary form, CMS looks to the medical diagnosis code recorded by the provider for that charge. Where a single charge corresponds to multiple diagnosis codes, CMS determines if any one code relates to a condition covered by the primary plan. If so, CMS seeks reimbursement from the primary plan for the full amount of the charge.

Here, CIGA was paying medical costs on behalf of three people for work-related injuries under three separate workers' compensation policies. CMS determined that it had also paid benefits to those people, and thus sent conditional payment letters to CIGA seeking full reimbursement for each charge containing at least one diagnosis code covered by CIGA's policies. Many of those charges, however, also contained numerous codes that all parties agreed were unrelated to any condition covered by the policy. CIGA argued that it should not be held responsible for the full amount of each line-item charge if it contained uncovered diagnosis codes, but CMS nonetheless issued a formal demand letter for the full amount of each charge. This lawsuit soon followed.[2]

In its Second Amended Complaint, which is now the operative complaint,

---

[1] After considering the papers submitted by the parties, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] At the time CIGA filed this action, there was no administrative appeals process in place to challenge final reimbursement determinations against primary payers. CMS has since passed regulations requiring that such reimbursement disputes go through an administrative appeals process prior to judicial review. *See generally* 80 Fed. Reg. 10,611-01 (Feb. 27, 2015).

CIGA brought claims under the (1) the Administrative Procedure Act, 5 U.S.C. § 702; (2) the Medicare Act, 42 U.S.C. § 1395ii; and (3) the Declaratory Judgment Act, 28 U.S.C. § 2201. (ECF No. 40.). CIGA alleged, among other things, that CMS improperly sought reimbursement for charges that did not fall "within the coverage of an insurance policy of the insolvent insurer." (*Id.* ¶¶ 43–47, 48–52.)[3] CIGA moved for partial summary judgment on its APA claim, and Defendants moved for summary judgment on the entire action. (ECF Nos. 63, 68.) After the Court heard oral argument, Defendants withdrew the three demand letters and moved to dismiss the case as moot. (ECF No. 87.)

The Court subsequently issued an order on the motion to dismiss and the motions for summary judgment. (ECF No. 94.) Because there may be some misunderstanding as to the scope of the Court's ruling, the Court will summarize it in detail. First, the Court held that because Defendants simply withdrew the reimbursement demands without renouncing their allegedly unlawful policy, no part of CIGA's claims were moot. (Order at 7–9.) Second, insofar as CIGA sought simply to challenge CMS's blanket practice of seeking reimbursement from primary plans for the full amount of a charge that contained uncovered diagnosis codes, CIGA met its burden simply by identifying codes that all parties agree are uncovered. (*Id.* at 12–14.) Third, the Court held that one statutory "item or service" does not as a matter of law equate to whatever medical procedure(s) are billed for in a single line-item charge on a payment summary form; rather, a statutory "item or service" simply refers to one indivisible medical item, device, medical supply, or service, regardless of how it is billed. (*Id.* at 14–15.) Whether a particular line-item charge contains more than one indivisible "item or service" is a *factual* question that needs to be resolved on a case-by-case basis. (*See id.* at 16 n.8.) Fourth, in the event that a single line-item charge contains one covered "item or service" and one uncovered "item or service,"

---

[3] Both the Second Amended Complaint and prior iterations of the complaint asserted other theories as to why CIGA was not responsible for reimbursing CMS for various conditional payments. The Court previously dismissed each of those other theories.

CIGA does not have a responsibility to make payment for the uncovered "item or service" just because it was lumped together with a covered "item or service." (*Id.* at 15–17.) Finally, the Court also notes what it did *not* decide. The Court did not decide: (1) whether the cost of a single indivisible "item or service" must be apportioned among multiple diagnosis codes;[4] or (2) whether each individual line-item charge in this lawsuit in fact consisted of multiple "items or services."[5]

Following the issuance of this order, the parties indicated that they could not agree on the relief to which CIGA was entitled. (ECF No. 95.) The parties therefore submitted briefing on the matter, which is now before the Court for decision. (ECF Nos. 97–99.)

## III. DISCUSSION

CIGA seeks the following relief: (1) an order vacating and setting aside CMS's demand that CIGA reimburse it for $119,122 of conditional payments; (2) a judicial declaration that CMS's three prior demands to CIGA, as well as CMS's billing practice, is unlawful; and (3) a permanent injunction prohibiting CMS from sending future reimbursement demands to CIGA based on the unlawful billing practice. (CIGA Br. at 1–2, ECF No. 97; Proposed Order and Final Judgment at 3–4, ECF No.

---

[4] It was CIGA's position that CMS was charging it for multiple unrelated treatments, not that CMS was failing to apportion the charge for a single treatment among multiple diagnosis codes. (*See, e.g.*, CIGA Mot. at 10 ("There is no dispute that the conditional payments that Defendants seek to recover from CIGA include charges for unrelated medical *treatment* that is not covered by the workers compensation policies." (emphasis added)), ECF No. 68; CIGA Reply at 5 (noting that the issue before the Court was "what happens when there is concurrent treatment for multiple conditions, some of which are covered by a primary payer and some are not"), ECF No. 77.) Thus, the Court had no occasion to consider whether a single treatment warranted apportionment.

[5] Defendants continue to insist that each line-item charge at issue in this lawsuit consisted of only one item or service, and suggest that the Court is under the "misapprehension" that multiple items or services were bundled into each line-item charge. (Defs.' Br. at 8 n.5.) To the extent Defendants take this position based on a legal interpretation of the statutory term "item or service," the Court considered and rejected that argument on summary judgment. To the extent Defendants are insisting as a factual matter that each line-item charge in this lawsuit consisted of only one indivisible medical item or service, the Court expressly declined to making any finding in this respect. (*See* Order at 16 n.8; *see also infra* pp. 8–10.) Had Defendants not withdrawn the reimbursement demands, this likely would have been an issue for CMS to consider on remand.

97-1.)  Defendants contend that the Court should not award any of the foregoing relief.  The Court addresses each form of relief in turn.

## A.    Setting Aside CMS's Demands

Of the three reimbursement demands at issue (which total over $300,000), CIGA alleged in this lawsuit that it was not responsible for reimbursing conditional payments amounting to $119,122.  (*See* CIGA Not. of Mot. for Partial Summ. J. at 2, ECF No. 68.)  Defendants do not dispute that the Court has the authority under the Administrative Procedure Act to "hold unlawful and set aside" the three final reimbursement demands that form the basis of this lawsuit.  *See* 5 U.S.C. § 706(2). Defendants argue, however, that the Court should not do so because CMS has already withdrawn those demands and has no intention of collecting on those demands in the future.  (Defs.' Br. at 3–4, ECF No. 98.)  As CIGA points out, this essentially repeats Defendants' prior argument that those three demands are moot—which the Court previously rejected.  Moroever, Defendants appeared to suggest in prior filings that CMS might issue new reimbursement demands in the future based on the same underlying charges.  (*See* Joint Report at 5–6 ("Accordingly, CMS has withdrawn the original demands.  Any new demands would be based on the recalculated amounts [and] would be subject to a full administrative appeals process . . . ."), ECF No. 83.) Because of this, it is particularly appropriate for the Court to enter a judgment setting aside the disputed portions of the demands as unlawful.  In the event CMS issues further reimbursement demands for any portion of the $119,122 in conditional payments, CMS will need to determine whether some sort of apportionment of the charges is warranted, and if so, by how much.

## B.    Declaratory Relief

Defendants argue that the Court need not declare the prior reimbursement demands unlawful for the same reason that the Court should not set them aside: it would be superfluous given that CMS no longer intends to seek reimbursement for the underlying payments.  (Defs.' Br. at 4–5.)  Defendants further argue that the Court

should not enter declaratory relief with respect to any future demands for reimbursement because doing so would "impinge on the [new] administrative procedures" for challenging such demands. (*Id.* at 5.)

### 1. Standard for Awarding Declaratory Relief

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), because "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289. In deciding whether declaratory relief is warranted, the district court is "[e]ssentially . . . balanc[ing] concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (citations and internal quotation marks omitted). "[T]he court may, after a full consideration of the merits, exercise its discretion to refuse to grant declaratory relief because the state of the record is inadequate to support the extent of relief sought." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985) (en banc); *see also Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 113–14 (1962) (holding that declaratory relief "should rest on an adequate and full-bodied record," and declining to award declaratory relief where the record contained only a "sketch[y] summar[y]" of the underlying facts and several critical issues remained "[un]explored"). Declaratory relief should also be denied "when prudential considerations counsel against its use," or where "it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *State of Wash.*, 759 F.2d at 1357 (citations omitted). Finally, "the decision to grant declaratory relief should always be made with reference to the public

interest." *Id.* The court may also consider other factors it deems appropriate in awarding such relief, including "whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; [and] whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998).

### 2. Retrospective Declaratory Relief

The Court declines to award declaratory relief with respect to the prior reimbursement demands. Although the Court disagrees with Defendants' assertion that such relief is not necessary because CMS does not intended to collect on the demands, the Court nevertheless concludes that such relief is duplicative given that the Court will set aside the disputed portions of the three prior demands under the APA. *See Dizol*, 133 F.3d at 1225 n.5; *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 848 n.5 (9th Cir. 2002) ("'[W]e consider declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred. In such a situation, however, declaratory relief is superfluous in light of the damages claim.'" (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 1997)) (some internal quotation marks omitted)); *Mendia v. Garcia*, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016) ("When a plaintiff seeks retrospective declaratory relief, courts have declined to award such relief where 'the issuance of a declaratory judgment . . . would have much the same effect as a full-fledged award of damages or restitution by the federal court.'" (quoting *Green v. Mansour*, 474 U.S. 64, 73 (1985))).

### 3. Prospective Declaratory Relief

However, the Court finds it appropriate to issue a limited judicial declaration regarding CMS's interpretation of the MSP. The disagreement between CIGA and

CMS over CMS's billing practice is not limited to this particular dispute; CMS continues to send Medicare reimbursement demands to CIGA based on this same billing practice. Indeed, CIGA points to several conditional payment letters recently issued by CMS that again seek full reimbursement for charges containing unrelated diagnosis codes. (CIGA Reply at 8, ECF No. 99; Azaran Decl. ¶¶ 9–24, ECF No. 99-2.) Given this, the Court concludes that clarifying the scope of the MSP will serve a useful purpose going forward. *See Richter v. Bowen*, 669 F. Supp. 275, 278–79 (N.D. Iowa 1987).

The Court shall issue a judicial declaration that: (1) One "item or service," as used in the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2)(B)(ii), does not as a matter of law equate to any medical items, devices, supplies, or services that appear under in a single line-item charge on a payment summary form issued by CMS. Rather, a statutory "item or service" simply refers to one indivisible medical item, device, medical supply, or service, regardless of how it is billed; (2) Whether a particular line-item charge on a payment summary form contains more than one indivisible item, device, medical supply, or service is a factual question that must be resolved on a case-by-case basis; (3) If a single line-item charge on a payment summary form contains multiple diagnosis codes—some of which relate to a medical condition covered by the insurance policy administered by CIGA and some of which do not—the presence of one covered code does not *ipso facto* make CIGA responsible for reimbursing the full amount of the charge; and (4) In the event that a single line-item charge on a payment summary form contains one indivisible item, device, medical supply, or service that is covered by the workers' compensation policy CIGA is administering, and one indivisible item, device, medical supply, or service that is not so covered, CIGA does not have a responsibility to make payment for the uncovered item, device, medical supply, or service just because it was billed under the

same single line-item charge as the covered item, device, medical supply, or service.[6]

The Court declines to award any further declaratory relief at this time because of the insufficiently developed record on summary judgment. *See State of Wash.*, 759 F.2d at 1356. In particular, it was not clear on summary judgment exactly how CMS or CIGA determines whether a single line-item charge corresponds to only a single "item or service." CIGA argued that the only way to explain how multiple and seemingly-unrelated diagnosis codes were listed for a single charge was that each charge actually included multiple divisible treatments. However, CIGA never produced any medical documentation showing exactly what treatment(s) each line-item charge represented, and did not otherwise offer a definitive method for making such a determination. Defendants argued (as they continue to do) that each line-item charge contained only *one* indivisible medical treatment. Defendants appeared to take this position based on a legal interpretation of MSP—that is, that one line-item charge on a payment summary form must as a matter of law represent one medical treatment because that is how the MSP defines "item or service." The Court rejected this legal interpretation, and Defendants did not present any evidence indicating what medical services each line-item charge represented.[7] In short, the parties put little meat on the

---

[6] Defendants argue that the propriety of any future reimbursement demands is a fact-intensive inquiry that is not amenable to a one-size-fits-all judicial declaration regarding the lawfulness of a particular practice used by CMS. (Defs.' Br. at 4–6.) While the Court agrees to a certain extent that the inquiry is fact-dependent, the Court is not convinced that all reimbursement disputes are (or should be) decided on a completely *ad hoc* basis with no grounding in consistent legal principles. Moreover, a judicial declaration is not inappropriate just because other factual issues with respect to those future disputes may need to be fleshed out before awarding further relief based on this judicial declaration. *See Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989) ("[N]othing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues."); *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1149 (10th Cir. 1974) ("A request for relief may be so limited under the Declaratory Judgment Act, and any further necessary and proper relief based upon the declaratory judgment and any additional facts which might be necessary to support such relief can be sought at a later time.").

[7] Defendants appeared to concede, however, that diagnosis codes could be used to determine the procedure that the provider billed for. (*See* Defs.' SUF 7 ("Diagnosis codes are alphanumeric codes . . . that are assigned to diagnoses *and procedures*." (emphasis added), ECF No. 64.)

bones of their dispute, forcing the Court to decide several issues in a factual vacuum.

To make matters even more murky, Defendants now submit a declaration suggesting that the specific medical treatments underlying each line-item charge can be directly determined using a *different* code that was not mentioned at all on summary judgment—the HCPCS/CPT code. (Mattes Decl. ¶ 10, ECF No. 98-1.) This now calls into doubt the original premise of CIGA's argument—i.e., that each line-item charge almost certainly represents multiple "items or services" simply because it contains multiple unrelated diagnosis codes. In light of this new information, the Court is not confident that it possesses a complete understanding of how determinations regarding the contents of a line-item charge are, can, or should be made, and the Court is not inclined to issue a broad judicial declaration that might ultimately require the parties to adopt an inefficient and unworkable reimbursement process going forward. *Cf. Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 703 (D.C. Cir. 1971) ("Another reality of the administrative process distinguishes between broad rulings on legal issues that are appropriate for court consideration, and in contrast the kind of rulings that must await and may turn on the development of specific fact situations. The courts are familiar with the need for restricting their rulings to broad questions fairly presentable in a litigation, without reaching questions of particular application that warrant separate consideration at a later time, if and when they arise. Courts are likewise ready to defer decision of broad questions that cannot be meaningfully analyzed without the aid of concrete factual backgrounds." (citations omitted)).

## C.    Injunctive Relief

Defendants argue that the traditional four-factor test does not favor issuing a permanent injunction. (Defs.' Br. at 6–12.) "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate

for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). This inquiry applies no less to injunctions against administrative agencies. *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004).

### 1. Irreparable Injury and Adequacy of Remedy[8]

CIGA advances two arguments as to why the absence of an injunction will result in irreparable harm. First, CIGA insists that continuing statutory violations necessarily constitute irreparable harm. (CIGA Br. at 9–10.) The Court disagrees. Defendants' violation of the MSP is not itself the relevant "harm" for the purposes of the four-factor test. Rather, the relevant "harm" is the injury CIGA will suffer *as a result of* Defendants' violation of the MSP—such as potentially being held responsible for over-inclusive reimbursement demands and having to file suit to set them aside (or, going forward, having to challenge the demands through the administrative appeals process). *See, e.g.*, *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (where Arizona enacted a potentially unconstitutional state statute prohibiting certain persons from obtaining driver's licenses, the irreparable harm inquiry focused on the effect on those persons of not having a license rather than the bare fact of a potential legal violation alone). To the extent CIGA asks this Court to assume that any injury or harm resulting from a statutory violation is necessarily irreparable, the Court declines to do so; any such rule would effectively eliminate the first two prongs of the four-factor test in the great majority of cases. *Cf. Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157–58 (2010) ("An injunction should issue only if the traditional four-factor test is satisfied. In contrast, the statements quoted above appear to presume that an injunction is the proper remedy for

---

[8] Because the analysis for the first and second factors substantially overlap, *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007), the Court will discuss them together.

a NEPA violation except in unusual circumstances.  No such thumb on the scales is warranted. . . . It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test set out above.").  To the extent the state court authorities that CIGA cites are to the contrary, the Court disagrees with them.

Next, CIGA argues that the absence of an injunction would require it to expend substantial resources challenging a billing practice that has already been declared unlawful.  While certain courts have concluded that being forced to repeatedly file suit to vindicate the same legal right can constitute an irreparable injury, *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007), CIGA overstates the likelihood of this happening.  The Court intends to issue a judicial declaration that Defendants' interpretation of the MSP was unlawful, and there is currently no evidence that this will not deter CMS from unabashedly repeating the same conduct based on the same erroneous legal argument.[9]  *See Monsanto Co.*, 561 U.S. at 165–66 ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.  If a less drastic remedy . . . was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted."); *Perez v. Ledesma*, 401 U.S. 82, 125–26 (1971) (Brennan, J., concurring in part and dissenting in part) ("[E]ven though a declaratory judgment has 'the force and effect of a final judgment,' it is a much milder form of relief than an injunction.  Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt." (citations

---

[9] Such a declaration should have preclusive effect in future reimbursement disputes.  *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."); *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, 390 (3d Cir. 2006) (issue preclusion applies in subsequent administrative proceedings unless the statute at issue specifically prohibits application of preclusion doctrines); *Ramon-Sepulveda v. I.N.S.*, 824 F.2d 749, 751 (9th Cir. 1987) (applying claim preclusion principles in subsequent administrative proceeding).

omitted)); *Prison Legal News v. Columbia Cty.*, 942 F. Supp. 2d 1068, 1091 (D. Or. 2013) (where the district court issues declaratory relief, the court should consider "whether injunctive relief is needed beyond declaratory relief").

The Court also notes that monetary harm—which is essentially all that a "strain on resources" is—is typically not irreparable. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*, 819 F. Supp. 2d 906, 920 (D.S.D. 2011). CIGA also does not point to any authority showing that it cannot recover its fees and costs from Defendants in the event Defendants elect to ignore the Court's declaration. *Contra Swedish Hosp. Corp. v. Shalala*, 845 F. Supp. 894, 902 (D.D.C. 1993) (awarding fees against the Secretary of Health and Human Services under the Equal Access to Justice Act).

In sum, based on the current record, these two factors do not favor entering an injunction.

## 2. Balance of Hardships

The Court also concludes that the balance of hardships favor Defendants. An injunction is a heavy-handed remedy that courts should not undertake lightly. *See Monsanto Co.*, 561 U.S. at 165–66; *Perez*, 401 U.S. at 125–26. This is particularly so in the case of federal agencies, which are charged with efficient administration of complex federal statutes and regulations. As previously noted, the Court does not appear to have a complete understanding of critical aspects of CMS's reimbursement process, not to mention many aspects of CMS's general administration of the MSP and the Medicare Act. Thus, the Court is reluctant to issue an injunction that may substantially disrupt those other aspects of CMS's operations—even if doing so cures one unlawful aspect of it. Moreover, issuing the requested injunction would inject the

Court into virtually all future reimbursement disputes between CIGA and CMS, for any arguable violation of the injunction would need to be resolved by this Court rather than through the administrative process. This would create a procedural nightmare.

CIGA's hardship, on the other hand, appears far less drastic. As Defendants point out, the administrative appeals process provides an avenue through which CIGA may obtain redress for any unlawful reimbursement demands. *See* 80 Fed. Reg. 10,611. CIGA may also seek judicial review of any unlawful final agency decision. 5 U.S.C. § 706. "The presence of a statutory review remedy will ordinarily render the injunctive interruption of the administrative process improper." *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1304 (10th Cir. 1973); *cf. Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (mandamus relief inappropriate because § 405(h) administrative appeals process provides a "clearly . . . adequate remedy" for challenging erroneous decisions by DHHS). While it might be more economical for CIGA if this Court were to issue an injunction barring specific billing practices by CMS, this obviously does not outweigh the harm to Defendants if the Court upended CMS's administration of a complex set of federal statutes. As a result, this factor also does not favor entering an injunction at this time.

### 3.    Public Interest

This factor tends to be neutral. Because both CIGA and CMS are statutorily-created agencies responsible for administering and paying large numbers of insurance claims, court action (or inaction) that is beneficial to either can also be said to be beneficial to the public interest. (CIGA Br. at 10–12; Opp'n at 9, 11–12.) This factor therefore does not tip the scales in either direction.

In sum, based on the evidence now before the Court, none of the equitable factors favor enjoining CMS's billing practice, and thus the Court declines to issue such an injunction at this time.

### D.    Trial

CIGA requests that, in the event the Court does not award all of the relief it

seeks, the Court set this matter for trial. Because the Court declined to provide the full injunctive and declaratory relief requested based at least in part on an insufficient factual record, it is appropriate for the Court to conduct a bench trial to more fully develop those issues—and thus potentially award CIGA all of the relief it seeks.

## IV. CONCLUSION

For the reasons discussed above, the Court shall enter (1) an order vacating and setting aside the disputed portions of three reimbursement demands at issue in this lawsuit and (2) a judicial declaration that CMS's interpretation of the MSP is unlawful with respect to reimbursement of conditional payments. The Court declines to issue further declaratory relief or an injunction at this time.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

The Court sets this matter for a bench trial on the outstanding issues of declaratory and injunctive relief as follows:

| Event | Date |
|---|---|
| Trial<br>Estimated Length: 2 days | 9/12/2017 at 9:00 a.m. |
| Last Date to File Final Trial Exhibit Stipulation | 9/7/2017 |
| Pretrial Conference<br>Hearing on Motions in Limine | 8/21/2017 at 1:30 p.m. |
| Deadline to File:<br>• Oppositions to Motions in Limine; | 8/14/2017 |
| Deadline to File:<br>• Proposed Pretrial Conference Order;<br>• Memoranda and Contentions of Fact and Law;<br>• Joint Witness List;<br>• Joint Exhibit List and Exhibit Stipulation;<br>• Proposed Findings of Fact and Conclusions of Law<br>• Joint Report re: Settlement<br>• Motions in Limine | 8/7/2017 |

**IT IS SO ORDERED.**

May 3, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**